GARY M. RESTAINO
United States Attorney
District of Arizona
JOSEPH F. BOZDECH
Assistant United States Attorney
California State Bar No. 303453
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: Joseph.Bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>1. $410.00 in United States Currency,<br>2. $19,000.00 in United States Currency,<br>3. Rolex Oyster Perpetual Watch,<br>4. Tag Heuer Orange Dial Watch,<br>5. Tag Heuer Aquaracer Watch,<br>6. Mont Blanc 1858 Iced Sea Automatic Watch,<br><br>　　　　　　　Defendants *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules):

## NATURE OF THE ACTION

1. This is a civil action in rem, brought to enforce the provisions of 18 U.S.C. §§ 981(a)(1)(C) for forfeiture of proceeds traceable to the straw purchasing of firearms in violation of 18 U.S.C. § 932.

2. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j) and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona that

give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355; 18 U.S.C. § 981(h).

### THE DEFENDANTS *IN REM*

3. The Defendants in rem consist of $410.00 and $19,000.00 in United States currency, one Rolex Oyster Perpetual Watch, one Tag Heuer Orange Dial Watch, one Tag Heuer Aquaracer Watch and one Mont Blanc 1858 Iced Sea Automatic Watch (collectively, the "defendant property"). The defendant property was seized from Nicholas Lombardi ("Lombardi") on April 6, 2023, in Mesa, Arizona, and is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

### INTRODUCTION

4. Daniel Arroyo ("Arroyo") is and has been unlawfully engaged in the business of acquiring and reselling firearms.

5. Some of the firearms Arroyo has acquired and resold have been recovered in or in transit to Mexico. The types of firearms Arroyo sells, including belt-fed and high caliber rifles, are in high demand among drug trafficking cartels.

6. Arroyo is not a licensed dealer in firearms, and his business dealing in firearms is unlawful under 18 U.S.C. § 922(a)(1)(A).

7. Lombardi purchased firearms in his own name, then transferred those firearms to Arroyo. Lombardi purchased multiple M134 minigun parts kits, as well as AK and AR style rifles.

8. Arroyo gave Lombardi the money to purchase firearms, and Lombardi retained a profit on each sale. Lombardi made purchases of at least $460,000 from firearms dealers between December 8, 2020 and November 9, 2022, despite having little legitimate income during that time period.

9. The defendant property consists of proceeds of Lombardi's unlawful straw purchases made on Arroyo's behalf.

### BACKGROUND

10. Title 18 U.S.C. § 922(a)(1)(A) makes it is unlawful for any individual to engage in the business of dealing firearms without a license or, in the course of such business, to ship, transport, or receive any firearm in interstate or foreign commerce.

11. A dealer in firearms is "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. 921(a)(11)(A). Section 921(a)(21)(C) provides that "engaged in the business [of selling firearms]" means "as applied to a dealer in firearms . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or businesses to predominantly earn a profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(2)(C). Anyone engaged in a business of dealing, manufacturing, or importing of firearms, or manufacturing or importing ammunition, must apply for and obtain a federal firearms license ("FFL") from ATF or be in violation of § 922(a)(1)(A).

12. When a firearm is purchased from a federal firearms licensee, the purchaser must fill out an ATF Form 4473. This form is the official transfer record that documents the transfer of the purchased firearm(s) from the federal firearms licensee to the purchaser. The purchaser must provide personal information about himself and answer a series of questions to determine if the purchaser is buying the firearms for himself and if the purchaser is a prohibited possessor.

13. The requirement that a firearms dealer must be licensed is explained on every ATF Form 4473.

14. Form 4473 includes a certification section which states, "I certify that my answers are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473 . . . I also understand that making any false oral or written statements or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal Law and may also violate State and/or local law." Below this paragraph is a signature and date line where the purchaser must sign and date, certifying that the information provided on the form is true, correct, and complete.

15. Based on training, experience, and consultation with other experienced firearms trafficking investigators, and numerous past and current ATF investigations in Phoenix, investigators know that firearms are purchased in cities located within the State of Arizona, or transferred to the State of Arizona, to be smuggled into areas with more restrictive firearm laws, such as California and Mexico.

16. Based on training and experience, investigators know that common signs of dealing firearms without a license includes individuals purchasing multiple firearms, purchasing the same firearm multiple times, or making multiple purchases during a short period of time. Making such purchases in cash is also a sign of dealing firearms without a license.

## **STATEMENT OF FACTS**

### *ATF's Investigation of Arroyo*

17. On or about June 2, 2017, Arroyo purchased a Canik Model TP-9SF, 9mm Pistol, Serial Number (SN) 17AT037890 from Sportsman's Warehouse in Avondale, Arizona.

18. The Canik was recovered by the Los Angeles Police Harbor Division in August of 2019 in the possession of a convicted felon.

19. On August 23, 2018, Arroyo purchased a FN M249 .556mm rifle SN: M249SA05213 (the "FN M249") from FFL Mo Money Pawn in Phoenix, Arizona.

20. During a December 16, 2018, interview with ATF Agents, Arroyo admitted that he sold the FN M249 for $11,000 to an unknown individual on the www.armslist.com website approximately one month after he purchased it.

21. Arroyo further admitted that he often purchased and sold firearms.

22. ATF Agents warned Arroyo about dealing firearms without a Federal Firearms License.

23. ATF would later learn that Arroyo had purchased approximately 60 firearms between January 2021 and June 2022. Of those 60 firearms, approximately 30

were belt-fed rifles of similar makes and models. Approximately nine were .50 caliber belt-fed rifles, which generally retail from $15,000 to $25,000 each.

24. Based on training and experience, ATF investigators know that belt-fed rifles such as the .50 caliber M-2 Browning and the .556 FN M249 are often sought by criminal organizations. Selling belt-fed weapons is highly profitable as they are typically sold to drug organizations in Mexico, where they are used to facilitate criminal activity. ATF investigators also learned that Arroyo had no employment history since early first quarter 2021.

### *ATF's Investigation of Lombardi*

25. ATF investigators learned that on August 29, 2022, Arroyo and Lombardi were scheduled to travel from Phoenix, Arizona to Denver, Colorado on an American Airlines flight and eventually to Ohio.

26. Investigators learned that Arroyo and Lombardi purchased an MK19 grenade launcher parts kit in Ohio.

27. On August 17, 2022, Lombardi purchased a Palmetto State Armory rifle, Model AK-P7, 7.62x39mm, SN: P7-016001 from FFL Mr. Silencer/East Valley Tactical located in Mesa Arizona.

28. This firearm was recovered by ATF in Pogo Row San Diego, California on September 1, 2022.

29. On August 17, 2022, Lombardi purchased a Romanian Arms/Cugir rifle, Model WASR-10UF, 7.62x39mm, SN: 22UF-5687 from FFL Mr. Silencer/East Valley Tactical.

30. This firearm was recovered by ATF in Pogo Row, San Diego, California on September 1, 2022.

31. On or about August 27, 2022, Lombardi purchased the following firearms from FFL Mr. Silencer/East Valley Tactical located in Mesa Arizona:

    (a) Palmetto State Armory rifle, PSAK47, 7.62x39mm, SN: AKB078281
    (b) Palmetto State Armory rifle, PSAK47, 7.62x39mm, SN: AKB077695

(c) Palmetto State Armory rifle, PSAK47, 7.62x39mm, SN: AKB077669

32. On or about February 9, 2021, Lombardi purchased the following firearms from FFL Bass Pro Shops Outdoor World located in Mesa, Arizona:

(a) Beretta Pistol Model APX, 9mm, SN: A125633X

(b) Beretta Pistol Model APX, 9mm, SN: A122729X

### *ATF Financial Investigation of Lombardi*

33. ATF investigators identified the following bank accounts held in the name of Nicholas Lombardi:

a. JP Morgan Chase Bank Total Checking Account ending in 2330

b. JP Morgan Chase Bank Savings Account ending in 9068

c. Wells Fargo Bank Everyday Checking Account ending in 0706

d. Wells Fargo Bank College Checking Account ending in 7262

e. Desert Federal Credit Union Membership Savings Account x7652-0000

f. Desert Federal Credit Union Free Checking Account ending in 7652-0400

34. For the period on or about December 9, 2020, through on or about January 10, 2023, more than $1,070,000 was received in Lombardi's bank accounts.

35. Forty-nine percent of funds (more than $530,000) was attributable to cash deposits from unknown sources.

36. Approximately thirty percent of the cash deposits took place during 2021, while approximately seventy percent of cash deposits took place during 2022.

37. Twenty-six percent of funds (approximately $270,000) was attributable to transfers from other accounts held by Lombardi.

38. Eight percent of funds (around $83,000) was attributable to monies received from Calvin T. Knight and organizations believed to be associated with Mr. Knight (i.e. Golden Watchtower Investments and Knight Watch Collections LLC).

39. Fourteen percent of funds (roughly $147,000) was attributable to a variety of sources including cashier's checks purchased by Lombardi and then deposited into Lombardi's own accounts.

6

40. Four percent of funds (nearly $40,000) was attributable to payroll and/or direct deposits from the following entities:

    a. Kohls Department Stores Inc.

    b. SH Management Services LLC

    c. GoHealth

    d. Richemont North

    e. Paychex North Am

41. According to the Arizona Department of Economic Security, Lombardi's last known employment was August 6, 2022, with Kohl's Department Stores Inc. ADES reports that Lombardi earned $7,995 in wages.

42. For the period on or about December 9, 2020, through on or about January 10, 2023, more than $1,050,000 was used from Lombardi's accounts as follows:

    a. fifty-seven percent of funds, nearly $600,000 were used to make payments on credit cards held by Lombardi at JP Morgan Chase Bank, Wells Fargo Bank, American Express, and Citibank.

    b. twenty-six percent of funds, more than $275,000, were transferred among accounts held by Lombardi.

    c. four percent of funds, approximately $44,000, was withdrawn in cash.

    d. two percent of funds, more than $21,000, were used to make a $6,000 purchase from Gunbroker Pay and a $15,000 purchase from Beltfeds.com LLC.

43. The remaining eleven percent of funds, more than $113,000, were used to pay for living expenses, transferred via Zelle, or transferred to a Schwab Brokerage Moneylink Account.

44. ATF identified the following credit card accounts held by Nicholas C. Lombardi with no other cardholders or members noted:

    a. JP Morgan Chase Bank credit card ending in 9018.

b. Wells Fargo Bank credit cards ending in 0978, 6643, 8914, 9160.

45. Credit card purchases totaled more than $770,000 from on or about December 8, 2020, through on or about November 9, 2022.

46. Payments and credits totaled more than $739,000 from on or about December 8, 2020, through on or about November 9, 2022.

47. Seventy-eight percent of payments, approximately $578,300, were made online.

48. Sixteen percent of payments, approximately $115,700, were made with cash. All cash payments were made in amounts of $10,000 or less.

### *Lombardi's Purchase of M134 Mini Gun Parts Sets*

49. On October 18, 2022, ATF investigators contacted www.beltfeds.com, located in Mohnton, Pennsylvania. Beltfeds.com specializes in large belt-fed type weapons such as M2's, M240's, M249's, M60's and M134 Mini Guns.

50. Beltfeds.com identified the following purchases made by Lombardi:

a. March 5, 2022, set of M134 Mini Gun Bolt tracks - $684.42

b. March 7, 2022, M134 Mini Gun parts (bolt set and pin) - $4,438.73

c. March 9, 2022, M134 Mini Gun Parts Set - $78,310.84

d. November 11, 2022, M134 Mini Gun Parts Set - $69,400.

51. The M134 Mini Gun is an American machine gun, 7.62x51mm (.308 caliber) with a high rate of fire, typically between 3,000-6,000 rounds a minute. It is a Gatling-style six-barrel rotor assembly using an external power source such as an electric motor. This weapon has been described as one of the most "deadly machine guns" on earth.

### *Lombardi's Other Firearm and Firearm-Related Purchase Activity*

52. On February 27, 2023, ATF investigators contacted the owner/operator of Magnum Ballistics a federal firearms licensee located in Mt. Pleasant, Michigan and confirmed that on August 21, 2023 Lombardi purchased a Barrett M82A1 .50 caliber rifle, SN: AA014595 for $10,265.81 which included shipping through UPS.

8

53. On or about August 22, 2022, the Barrett was shipped via UPS to a federal firearms licensee Tactical Armory located in Phoenix, Arizona. Tactical Armory confirmed receipt of the Barrett and subsequent sale to Lombardi on August 26, 2022.

54. All of Lombardi's firearms purchases are not known to ATF investigators due to the fact that Lombardi has a concealed carry weapons permit which allows him to forgo the NICS Brady Background Instant Check System.

55. Purchases made at vendors known to sell firearm and firearm-related goods (parts, ammunition, etc.) totaled more than $460,000. Total purchase amounts of $10,000 or more totaled approximately $349,000 as follows:

| | | |
|---|---|---|
| a. | MG Armory - | $98,000 |
| b. | Beltfeds.com - | $96,000 |
| c. | Target Sports USA - | $77,000 |
| d. | Freedom Munitions - | $17,000 |
| e. | Outdoor Limited - | $15,000 |
| f. | Guns Dot Com - | $15,000 |
| g. | East Valley Tactical - | $11,000 |
| h. | Magnum Ballistics - | $10,000 |
| i. | LAX Firing Range - | $10,000 |
| | Total | $349,000 |

### Execution of Federal Search Warrants at Lombardi's Residence

56. On April 6, 2023, ATF executed federal search warrants at Lombardi's residence in Mesa, Arizona.

57. During the search of Lombardi's residence, ATF seized the defendant property, as well as illegal narcotics, several firearms, and assorted ammunition.

### ATF Interview of Lombardi on April 6, 2023

58. In the course of executing the search warrants on April 6, 2023, ATF investigators engaged in a consensual conversation with Lombardi.

59. ATF investigators advised Lombardi of his rights.

9

60. Lombardi stated that he understood his rights, including the right to have an attorney present. Lombardi voluntarily chose to speak with ATF investigators and executed an Advisement of Rights Waiver form.

61. Lombardi said he was 27 years old and had lived at his current residence since October 2022.

62. Lombardi stated he was last employed by Kohl's Department Store but had been unemployed for several months.

63. When asked how many guns he had purchased during the last few years, Lombardi was unsure but claimed that he had sold about dozen guns over the last few years on www.armslist.com.

64. Lombardi admitted to selling all the M134 Mini Guns parts kits he had purchased in 2022 to Arroyo.

65. Lombardi confirmed that he recognized Arroyo in a photograph provided by ATF investigators.

66. Lombardi stated Arroyo found him on www.armslist.com in early 2022 when Arroyo purchased a gun and some ammo from Lombardi.

67. When asked where Lombardi obtained the money to purchase thousands of dollars in M134 Mini Gun kits, Lombardi stated he was directed by Arroyo to purchase M134 Mini Gun parts kits, firearms, ammunition, and firearms accessories such as magazines, and that he received the funds for those purchases from Arroyo.

68. Lombardi explained that he worked for Arroyo because he was not employed and needed money.

69. Lombardi advised he made purchases of firearms including AK style rifles and a Barrett .50 caliber rifle at Arroyo's direction on www.armslist.com and from various federal firearms licensees.

70. Arroyo paid Lombardi $300 profit per AK rifle and $2,000 for the Barrett .50 caliber rifle.

71. Lombardi admitted the first time he purchased a M134 Mini Gun parts kit for Arroyo he made $10,000 in profit, and $20,000-$30,000 in profit the second time.

72. Lombardi estimated that he made $60,000-$70,000 in profit for the purchase of Mini Gun kits during 2022.

73. When asked if Lombardi knew what Arroyo did for a living, Lombardi said he had asked Arroyo many times, and each time Arroyo provided a different answer.

74. Lombardi stated he was paying his monthly expenses such as the lease on his apartment and the loan on his white Honda with the profits from purchases he made for Arroyo. Lombardi estimated his living expenses at $6,000 per month.

75. Lombardi admitted to the purchase of approximately $30,000 to $40,000 in mainly AK style 7.62x39mm ammunition.

76. Lombardi identified the M134 Mini Gun as using 7.62 caliber ammunition. Investigators advised Lombardi that ATF was aware that he purchased cases of .308/7.62x51mm ammunition.

77. Lombardi said that he may have purchased an AR-10 rifle for Arroyo that fired .308 ammunition.

78. Lombardi estimated that he made $5,000 profit for the ammunition he purchased for Arroyo and approximately $5,000 profit in firearm accessories.

79. Lombardi said that he thought there were several individuals purchasing firearms for Arroyo.

80. Lombardi also recalled purchasing three guns for Arroyo in August of 2022 from East Valley Tactical.

81. Lombardi stated after he purchased guns, he would deliver them to Arroyo. Lombardi said he made $300-$400 profit per gun in this transaction, for $900-$1200 total profit.

82. When asked about possession and sale of controlled substances, Lombardi admitted that he made approximately $2,000 per month selling cocaine at bars and clubs in Mesa and Scottsdale.

11

83. Lombardi stated that he understood what he was doing was wrong as far as falsifying the ATF Form 4473 when he purchased firearms for Arroyo.

84. Lombardi admitted that on August 29, 2022, he traveled with Arroyo from Phoenix to Columbus, Ohio and met with a former FFL to purchase an MK-19 (Mark 19) grenade launcher parts kit for $17,000.

85. Lombardi initially stated he did not know why Arroyo asked him to travel with him to Ohio. Arroyo paid for the plane tickets, hotel, rental car, food, and other things while on the trip. Lombardi stated that he was not paid for making the Ohio trip with Arroyo. Lombardi was transporting $10,000 in cash, and Arroyo was also transporting $10,000 in cash from Phoenix to Ohio for the purchase of the MK-19.

86. Lombardi acknowledged that fact that over $1,000,000 moved through his various bank accounts between December of 2020 and January 2023. When asked how he accounted for that, Lombardi stated that he purchased some watches and sold them.

87. Lombardi stated that he spent well over $400,000 on his credit cards alone on purchases for Arroyo.

88. Lombardi claimed that he spent approximately $200,000 on watch purchases last year. Lombardi estimated that he could make as much as $100,000 with his side hustle flipping watches. Lombardi claimed that, in 2022, he made approximately $10,000-$20,000 in profit from the watches.

89. Lombardi agreed that 80-90% of cash deposits into his bank accounts were provided by Arroyo.

## SUMMARY

90. Arroyo was engaged in the business of dealing in firearms without a license, which is a felony under 18 U.S.C. § 922(a)(1)(A).

91. Lombardi repeatedly purchased firearms, including AK and AR style rifles and at least one .50 caliber rifle, and ammunition at Arroyo's behest. Arroyo provided the money to purchase the firearms and ammunition, and Lombardi was paid for purchasing the firearms and ammunition.

92. Lombardi admitted that he was aware that other individuals were also purchasing firearms on Arroyo's behalf.

93. Lombardi knew, or had reasonable cause to believe, that Arroyo intended to use, sell, or dispose of the firearms he purchased in furtherance of a felony, including unlawful dealing in firearms.

94. Lombardi had little reported income and earned far less than his reported living expenses.

## FIRST CLAIM FOR RELIEF

The defendant property is proceeds or was purchased with proceeds involved in a violation of, or a conspiracy to violate 18 U.S.C. § 932, and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 27th day of September 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*S/Joseph F. Bozdech*
Assistant United States Attorney